## J. B. WATKINS v. WILLIAM INGE.

1. TAX LAW IN FORCE AT TIME OF TAX SALE, *to Govern.* Section 155 of chapter 34, Laws 1876, continued in force the provisions of chapter 107, Gen. Stat. 1868, relative to the sale and conveyance of lands for taxes, after the adoption of the act of 1876, so far as to authorize the execution of tax deeds, in accordance with the statute of 1868, for all sales made under that statute.

2. TAX DEED, *Not Void.* A tax deed executed in 1877, for several separate tracts of land bid off by the tax purchaser at the tax sales of 1874, is not void on its face, if the deed shows as many sales as tracts of land, the delinquent tax on each tract, and the consideration for each tract.

3. TAX DEED, *to What Extent Valid.* A defective or insufficient description of one tract of land in such a deed will not invalidate the deed as to the tracts properly and sufficiently described.

4. FINDING OF COURT, *Upheld; Evidence.* Where the court finds generally in favor of the validity of a tax deed, and such deed is regular upon its face, and there is oral evidence that the delinquent tax list was properly published and posted, and also some oral evidence of the making and filing of the affidavits of such publication and posting, testimony of the inability of the county clerk to find the affidavits in his office will not overthrow the finding of the court as to the validity of the deed.

5. TAX-SALE NOTICE, *Publication of.* The publication of the notice of a tax sale, required by § 82, ch. 107, Gen. Stat. 1868, need not be continuous up to the day of sale, to comply with the statute.

6. INEXACT AMOUNT STATED *in Redemption Notice.* The final notice to redeem was dated November 28, 1876, and set forth that the amount of taxes charged, and interest calculated to the last day of redemption, was $192.32, but it further stated that the taxes of 1876 were not included in this computation. Including the taxes of 1876, the amount necessary to redeem was $285. No redemption was attempted, or any offer to re-

deem made. *Held*, That the failure to state more accurately the exact amount of taxes and interest due on the last day of redemption was not fatal to the notice or the tax deed.

7. COUNTY TREASURER IN FACT, *Valid Acts of.* Where the board of county commissioners improperly declares the office of county treasurer vacant, and fills the supposed vacancy by another than the regularly-elected, qualified and acting treasurer, and such other person duly qualifies, and obtains full possession of the office, occupies such office, and performs the duties thereof continuously and exclusively for several months, *held*, that although the county board had no legal right to declare the office vacant, so long as the appointee remains in full control and possession of the office under the appointment, his acts as treasurer are valid, so far at least as the rights of the public, or third parties having an interest in such acts, are concerned.

### *Error from Coffey District Court.*

ACTION in the nature of ejectment, brought by *Watkins* against *Inge*, to recover the possession of the southwest quarter of section 16, township 23, range 17, in Coffey county. At the December Term, 1879, of the district court, the second trial was had, and judgment rendered for the defendant. *Watkins* brings the case here. The opinion states the facts.

*Johnston & Bertram*, for plaintiff in error.

*Graves & Manchester*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the nature of ejectment, commenced June 8, 1878, in the district court of Coffey county, by J. B. Watkins, against William Inge, to recover the possession of lots three, four, five and six, in section sixteen, township twenty-three, range seventeen, in said county, being the southwest quarter of section sixteen, in said township and range. The second trial was had, on the plaintiff's petition, and an answer of general denial on the part of defendant, to the court, a jury being waived. A general finding was made for defendant, and judgment for costs rendered in his favor.

Defendant's right of possession rests upon the title acquired

by and through a tax deed to one Austin Corbin, dated May 14, 1877, and a quitclaim deed from Corbin to him, of February 27, 1878. The questions presented concern the validity of the tax deed. Plaintiff claims, first, that the deed is void upon its face; second, that the proceedings antecedent to the tax sale were not in compliance with the statute authorizing the sale of property for delinquent taxes; third, that there was fatal error in the redemption notice, as published; and, fourth, that the tax sale was invalid, because the person who made it had no authority of law to act as county treasurer at the time it was executed.

The alleged reasons for the deed being void upon its face, are, that it conveys, or undertakes to convey, to Corbin, several separate and distinct tracts of land; that the consideration expressed therein is a gross or aggregate sum; that there is an error in one description. The deed recites separate sales, shows as many sales as tracts of land, gives the delinquent tax on each tract of land separately, and also the sum bid and paid on each different tract; therefore the case of *Hall's Heirs v. Dodge*, 18 Kas. 277, does not control. The sales were had in May, 1874, for the delinquent taxes of 1873. Sec. 115, ch. 107, Gen. Stat. 1868, provided that —

"In any case where any purchaser at any tax sale shall purchase more than one piece of land, or lot, or lots, he may require the county clerk to include all such lands or lots in one deed; and, in addition to the fee for any such deed, the county clerk shall be allowed the sum of five cents for each piece of land or lot so included in any such deed."

In 1876 there was a new statute relating to assessment and taxation adopted, repealing the act of 1868, but prescribing that —

"All matters relative to the sale and conveyance of lands for taxes under any prior statute, shall be fully completed according to the laws under which they originated, the same as if such laws remained in force." (Comp. Laws 1879, ch. 107, § 155.)

By said § 155 of the act of 1876, § 115 of the act of 1868 was continued in force, notwithstanding the repealing clause

of the act of 1876, so far as to authorize the execution of tax deeds for lands sold for taxes under the statute of 1868, in accordance with the provisions of that section. The clerk of Coffey county had, therefore, full authority to include several separate tracts of land in the tax deed.

Counsel for plaintiff suggest that § 155 of the act of 1876, is retrospective legislation. This is not true. This statute is an attempt to preserve, or rather protect, the inchoate rights of purchasers at tax sales under prior statutes, and so modifies the effect of the repeal of the act of 1868 as to make the act of 1876 applicable to future sales. It is a saving act, and cannot be said to impair the obligation of any contract, or take away any vested right of property, and is not violative of any constitutional provision or any principle of justice.

The error in the description of one tract of land in the deed cannot be held to invalidate the deed as to the tracts properly described. Each tract is inserted in the deed separate and apart from the other descriptions, and each sale stands upon the recitals of the deed in regard to such sale, and the specific land sold at such sale. The authority to include in one deed several tracts of land purchased at a tax sale, tends to lessen the costs of the tax purchaser in obtaining and recording his deeds, and relieve the county clerk of labor in executing separate deeds to a purchaser who has bid in several tracts of land at the tax sales. Upon the foregoing grounds, we hold the tax deed not void on its face.

The defects in the proceedings antecedent to the tax sale are alleged to be, first, a failure to post up the delinquent tax list as required by § 82, ch. 107, Gen. Stat. 1868; second, if the treasurer did properly post the list, that he failed to make affidavit of such posting, and failed to file the affidavit with the county clerk as provided in § 83 of said chapter; third, that the treasurer failed to file with the county clerk the affidavit of the printer who published such list and notice; fourth, that the publication of the delinquent tax list

and notice was insufficient. In the condition of the record, we cannot say that these defects ever existed. The court found generally against plaintiff. The tax deed is made *prima facie* evidence of the regularity of all prior proceedings, and of the fact, therefore, that the delinquent tax list was duly posted up, that all notices and affidavits required were given and filed. Now, although the county clerk could not find in his office any affidavit of the posting of the tax list and notice, nor the affidavit of the printer, yet the oral testimony offered clearly established the posting-up of the list in full compliance with said § 82, and tended, also, to prove the making and filing of the several affidavits referred to. Under these circumstances, we cannot assume the existence of the defects asserted by counsel. If the plaintiff had desired to obtain a separate finding as to the existence of any defects in the tax proceedings, he should have requested special findings of fact, and he might have designated specifically the questions or issues upon which he wished the findings made. Again, as it is clearly apparent that the notice of the tax sale was published and the posting made, it is extremely doubtful whether the omission to file the affidavits of such publication and posting would amount to anything more than a mere irregularity; and therefore, under the provisions of § 139, ch. 107, Comp. Laws 1879, would not invalidate the title conveyed by the tax deed. This question, however, we need not decide.

The objection to the publication of the notice of the tax sale is, that upon the authority of *McCurdy v. Baker*, 11 Kas. 111, and *Whitaker v. Beach*, 12 Kas. 492, such publication was insufficient in not being continued up to the day of sale. It appears from the record that the publications were made in 1874, on March 5th, March 12th, March 19th, and March 26th. The difference in the language of § 457 of the code, and § 82, ch. 107, Gen. Stat. 1868, taken in connection with § 81 of the same chapter, is obvious. The language in § 457 is, "Public notice of the time and place of sale, to be given

for at least thirty days before the day of sale, by advertisement in some newspaper." The preposition "for," as used, largely determines the interpretation given to the section. By § 81, the treasurer was required to make out the list of lands and town lots, delinquent for taxes, between the first and tenth days of March of each year, with the accompanying notice, and in § 82, the language is, the list and notice are to be published "once in each week for four consecutive weeks prior to the day of sale." Therefore, as the publication of the list and notice was commenced after March 1st, in 1874, and published once in each week for four consecutive weeks prior to the sale, the statute was complied with. The provisions of said §§ 81 and 82 will not warrant us in holding that the publication of the tax-sale notice must be continuous up to the day of sale, and the arguments in *McCurdy v. Baker*, supra, and *Whitaker v. Beach*, supra, when carefully examined, do not justify such a conclusion.

Counsel for plaintiff also attack the tax deed on the ground that there was not a strict compliance with § 137, ch. 34, Laws 1876, (Compiled Laws 1879, ch. 107, § 137,) because the tax roll showed a much larger amount necessary to redeem the land than the amount published in the redemption notice. The final notice was dated November 28, 1876, and stated that the tax of 1876 was not included in the computation. The amount in the notice was $192.32; the tax roll showed $285, as the taxes and interest due on the last day of redemption. This notice informed all parties that the amount necessary to redeem the property, exclusive of the taxes of 1876, was $192.32.

The tax of 1876, as we understand the evidence, swelled the sum to $285. Any person wishing to redeem could easily ascertain the taxes of 1876, and, as no redemption was attempted, or any offer to redeem made, in view of all the statements contained therein it cannot be said that the notice misled any one, or worked injustice. Even if we assume that there was error in the notice of the amount required to

redeem the land on the last day of redemption, the error cannot be held fatal to the notice or the tax deed, under the provisions of § 139, ch. 34, Laws 1876; § 139, ch. 107, Comp. Laws 1879; *Shoup v. C. B. U. P. Rld. Co.*, ante, p. 547.

The final objection to the deed is, that the party making the sale was neither treasurer *de facto* nor *de jure*. The evidence shows, that on November 15, 1873, C. H. Graham was the duly-elected, qualified and acting county treasurer of Coffey county; that on that day the board of county commissioners of the county declared the office vacant; that on November 17, 1873, the board appointed H. E. Cowgill treasurer, to fill the supposed vacancy; that he duly qualified, and on November 21, 1873, took possession of the office, occupied it, and performed the duties thereof continuously and exclusively up to and long after the tax sale of 1874. Although the county board had no right to declare the office vacant, yet so long as Cowgill remained in the office under his appointment, and had full and exclusive charge thereof, he was in the exercise of the duties of the office under the claim and color of right, and his acts as an officer *de facto* are valid, so far, at least, as the rights of the public, or third persons having an interest in such acts, are concerned. Hence, the final objection is not well taken.

The judgment of the district court will be affirmed.

All the Justices concurring.